**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : : : |
| Plaintiff, | : : |
| v. | : : |
| RYAN D. EVANS AND PAUL A. GIANAMORE | : : : |
| Defendants. | : : |

CIVIL ACTION FILE NO.

DOCKETED JAN 2 5 2002

02C 0582

JUDGE CASTILLO

MAGISTRATE JUDGE BOBRICK

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, Securities and Exchange Commission ("Plaintiff" or "Commission"), alleges the following:

### NATURE OF THE COMPLAINT

1.      From in or about December 1999 to in or about August 2000, Paul A. Gianamore ("Gianamore"), then a Credit Suisse First Boston Financial Analyst, tipped his friend Ryan D. Evans ("Evans") with material, nonpublic information regarding several publicly traded companies. Evans then traded in the securities of these companies while in possession of this information. Specifically, during the relevant time period, Credit Suisse First Boston's Chicago office ("CSFB Chicago") acted as a financial advisor to one of the parties of at least four merger

1

or acquisition transactions. Through his employment at CSFB Chicago, Gianamore obtained

nonpublic information about the mergers and acquisitions in issue before they were publicly

announced. He then tipped Evans with the inside information. While in possession of this

information, Evans purchased shares in companies shortly before an announcement of the merger

or acquisition. In each case, Evans sold his shares shortly after the public announcement of the

merger or acquisition, making approximately $243,667.17 from these four trades.

2.     Defendants Evans and Gianamore (collectively "Defendants") directly and

indirectly, have engaged and, unless enjoined, will continue to engage in acts, practices and

courses of business which constitute and will constitute violations of Sections 10(b) and 14(e) of

the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b) and §78n(e)] and

Rules 10b-5 and 14e-3 [17 C.F.R. §240.10b-5 and §240.14e-3] promulgated thereunder.

3.     Plaintiff brings this action to enjoin such acts, practices and courses of business,

and for other equitable relief, pursuant to Sections 21(d), 21(e) and 21A of the Exchange Act [15

U.S.C. §§78u(d),78u(e) and 78u-1(a)].

## JURISDICTION

4.     The Court has jurisdiction over this action pursuant to Sections 21 and 27 of the

Exchange Act [15 U.S.C. §§78u and 78aa].

5.     Defendants will, directly and indirectly, unless enjoined, have the opportunity to

engage in the acts, practices and courses of business set forth in this Complaint and in acts,

practices and courses of business of similar purport and object.

6.     The acts, practices and courses of business constituting the violations herein have

2

occurred within the jurisdiction of the United States District Court for the Northern District of Illinois and elsewhere.

7.      Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices and courses of business alleged herein within the jurisdiction of the Northern District of Illinois and elsewhere.

## THE DEFENDANTS

8.      At all times relevant herein, Defendant Evans, who is 24 years old, lived in or near Chicago, Illinois. At all times relevant herein, Defendant Evans was employed as a financial analyst at dotspot, inc. ("dotspot"), a wholly owned subsidiary of divine interVentures, inc., in Chicago, Illinois.

9.      At all times relevant herein, Defendant Gianamore, who is 24 years old, lived in or near the Chicago metropolitan area. At all relevant times, Gianamore worked as a financial analyst at Credit Suisse First Boston ("CSFB"). He was in the Chicago office from the fall of 1999 until October 15, 2000. He worked in the CSFB San Francisco office from October 15, 2000 until his resignation on April 27, 2001.

## ENTITIES INVOLVED

10.      Jostens Inc. ("Jostens"), is a marketer of commemorative school products and services. Jostens is headquartered in Minneapolis, Minnesota. On or about December 28, 1999, it was publicly announced that Jostens would be merged into a company controlled by Investcorp., a global investment group, and certain other international co-investors under a

3

definitive agreement. Before its merger with Investcorp., Jostens's shares traded on the New York Stock Exchange.

11.     Charter plc ("Charter"), is an industrial group that manufactures rail track, working environment and welding consumable equipment, as well as air and gas handling equipment. Charter maintains operations in Europe, North America, South America, and in the Asia/Pacific region. On or about April 26, 2000, Lincoln Electric Holdings Inc. ("Lincoln Electric"), a maker of electric motors and welding products, publicly announced its agreement to buy Charter. Charter's shares trade on the London Stock Exchange.

12.     Hussmann International, Inc. ("Hussman"), manufactures merchandise and commercial refrigeration systems for the global food industry. Hussmann is located outside St. Louis, Missouri. On or about May 12, 2000, it was publicly announced that Ingersoll-Rand Company ("Ingersoll-Rand") intended to acquire Hussmann. Before its acquisition by Ingersoll-Rand, Hussmann's shares traded on the New York Stock Exchange.

13.     Burns International Services Corporation ("Burns"), provides physical security and related services and is located in Chicago, Illinois. On or about August 3, 2000, Securitas AB ("Securitas") publicly announced that it would acquire Burns. Before its acquisition by Securitas, Burns's shares traded on the New York Stock Exchange.

## FACTS

### I. Background

14.     During the relevant time period, CSFB Chicago was retained separately by, among others, Jostens, Lincoln Electric, Hussmann and Burns regarding possible merger or acquisition transactions.

15.     At all times relevant herein, CSFB had written procedures prohibiting the misuse of nonpublic information obtained through the course of employment at CSFB. These procedures expressly stated that fraudulent misuse includes the "tipping" of such information to anyone.

16.     At all times relevant herein, Gianamore was aware of these procedures.

17.     Gianamore, in the course of his employment at CSFB, had possession of and access to nonpublic information related to transactions in which CSFB acted as a financial advisor.

18.     Gianamore and Evans were close friends throughout the time of Gianamore's employment at CSFB. They had been friends for approximately four years, at least since they were students together at DePaul University in Chicago, Illinois.

19.     Evans knew or had reason to know that Gianamore had access to and possessed nonpublic information in the course of his employment at CSFB.

20.     Evans knew or had reason to know that it was improper for Gianamore to communicate to Evans nonpublic information Gianamore obtained in the course of his

employment.

## II.     The Jostens Trade

21.     On or about December 28, 1999, Jostens and Investcorp. issued a press release announcing the execution of a merger agreement.  Jostens stock closed on December 28, 1999 at approximately $24.25 per share, up approximately 32.42% from its closing price on December 27, 1999.

22.     CSFB advised Jostens in this transaction.

23.     Prior to the public announcement regarding the Jostens and Investcorp. merger, Gianamore became aware of nonpublic information regarding the upcoming Jostens and Investcorp. merger through the course of his employment at CSFB Chicago.

24.     Gianamore knew or had reason to know that the information regarding the Jostens and Investcorp. merger was nonpublic.

25.     Prior to the public announcement regarding the Jostens and Investcorp. merger, Gianamore communicated nonpublic information regarding the upcoming Jostens and Investcorp. merger to Evans.

26.     While in possession of nonpublic information regarding the upcoming Jostens and Investcorp. merger from Gianamore, on or about December 22, 1999, Evans bought approximately 1,249 shares of Jostens at a price of approximately $17.4375 per share for a total of approximately $21,787.44.

27.     At or around this time, Evans knew or had reason to know that it was improper for Gianamore to communicate nonpublic information regarding the upcoming Jostens and Investcorp. merger to Evans.

28.     Following the public announcement regarding the Jostens and Investcorp. merger, on or about December 28, 1999, Evans sold approximately 1,245 Jostens shares at a price of approximately $23.875 per share for a total of approximately $29,715.38, realizing a profit of approximately $7,927.94.

**III.     The Charter Trade**

29.     On or about April 26, 2000, the Boards of Lincoln Electric and Charter publicly announced that they had agreed to the terms of a recommended cash offer to be made by CSFB on behalf of a wholly-owned subsidiary of Lincoln Electric, to acquire the entire issued and to be issued share capital of Charter.  Charter's stock closed on April 26, 2000 at approximately 467.5 pence per share, up 224 pence or approximately 92%.

30.     CSFB advised Lincoln Electric in this transaction.

31.     Prior to the public announcement and after substantial steps had been taken to commence the tender offer involving Lincoln Electric and Charter, Gianamore became aware of nonpublic information regarding the upcoming Lincoln acquisition of Charter through the course of his employment at CSFB Chicago.

32.     Gianamore knew or had reason to know that the information regarding the upcoming Lincoln acquisition of Charter was nonpublic.

33.     Prior to the public announcement and after substantial steps had been taken to commence the tender offer involving Lincoln Electric and Charter, Gianamore communicated nonpublic information regarding the Lincoln Electric acquisition of Charter to Evans.

34.     While in possession of nonpublic information regarding the Lincoln Electric acquisition of Charter from Gianamore, on or about April 25, 2000, Evans purchased approximately 8752 shares of Charter at a price of approximately $4.00 per share for a total of approximately $35,031.

35.     At or around this time, Evans knew or had reason to know that it was improper for Gianamore to communicate nonpublic information regarding the Lincoln Electric acquisition of Charter to Evans.

36.     Following the public announcement regarding the Lincoln Electric acquisition of Charter, on or about April 27, 2000, Evans sold his entire position of Charter at a price of approximately $6.875 per share for a total of approximately $60,154.99, realizing a profit of approximately $25,123.99.

**IV.     The Hussmann Trade**

37.     On or about May 12, 2000, Ingersoll-Rand and Hussmann jointly issued a press release announcing the execution of the merger agreement.  Hussmann's stock closed on May 12, 2000, at approximately $28.65 per share, up 15 points or approximately 113%.

38.     CSFB advised Hussmann on this transaction.

39.     Prior to the public announcement and after substantial steps had been taken to commence the tender offer involving Ingersoll-Rand and Hussmann, Gianamore became aware

8

of nonpublic information regarding the Ingersoll-Rand and Hussmann merger through the course of his employment at CSFB Chicago.

40.     Gianamore knew or had reason to know that the information regarding the Ingersoll-Rand and Hussmann merger was nonpublic.

41.     Prior to the public announcement and after substantial steps had been taken to commence the tender offer involving Ingersoll-Rand and Hussmann, Gianamore communicated nonpublic information regarding the Ingersoll-Rand and Hussmann merger to Evans.

42.     While in possession of nonpublic information regarding the Ingersoll-Rand and Hussmann merger from Gianamore, on or about May 11, 2000, Evans made two purchases of shares of Hussmann. The first purchase of approximately 7100 shares was at a price of approximately $13.25 per share for a total of approximately $ 94,088. The second purchase of approximately 1800 shares was at a price of approximately $13.4375 per share for a total of approximately $24,195.50.

43.     At or around this time, Evans knew or had reason to know that it was improper for Gianamore to communicate nonpublic information regarding the Ingersoll-Rand and Hussmann merger to Evans.

44.     Following the public announcement, on or about May 12, 2000, Evans sold his entire position of Hussmann at a price of approximately $ 28.5625 per share for a total of approximately $254,184.77, realizing a profit of approximately $135,901.27.

## V.    The Burns Trade

45.    On or about August 3, 2000, before the opening of trading of shares on the New York Stock Exchange, it was publicly announced that Securitas would acquire Burns.  On August 3, 2000, Burns's stock closed at approximately $21.109 per share, up 8 points or approximately 60%.

46.    CSFB advised Burns on this transaction.

47.    Prior to the public announcement and after substantial steps had been taken to commence the tender offer involving Securitas and Burns, Gianamore became aware of nonpublic information regarding the Securitas acquisition of Burns through the course of his employment at CSFB Chicago.

48.    Gianamore knew or had reason to know that the information regarding the Securitas acquisition of Burns was nonpublic.

49.    Prior to the public announcement and after substantial steps had been taken to commence the tender offer involving Securitas and Burns, Gianamore communicated nonpublic information regarding the Securitas acquisition of Burns to Evans.

50.    While in possession of nonpublic information regarding the Securitas acquisition of Burns from Gianamore, on or about August 2, 2000, Evans made several purchases of Burns. He purchased approximately 3000 shares of Burns at a price of approximately $13.75 per share for a total of approximately $41,250.  He purchased an additional approximate 1000 shares of Burns at a price of approximately $13.625 per share for a total of approximately $13,633.  He

purchased an additional approximate 6000 shares of Burns at a price of approximately $13.5 per

share, for a total of approximately $81,013.

51.     At or around this time, Evans knew or had reason to know that it was improper for

Gianamore to communicate nonpublic information regarding the Securitas acquisition of Burns

to Evans.

52.     Following the public announcement, on or about August 3, 2000 Evans sold his

shares at a price of approximately $21.0625 per share for a total of approximately $210,609.97,

realizing a profit of approximately $74,713.97.

## COUNT I

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder

53.     Paragraphs 1 through 52 are realleged and incorporated by reference herein.

54.     During the relevant time period, Defendants Evans and Gianamore in connection

with the purchase and sale of securities, namely the securities of Jostens, Charter, Hussman and

Burns, and by the use of the means and instrumentalities of interstate commerce and by the use

of the mails, directly and indirectly, employed devices, schemes and artifices to defraud, made

untrue statements of material facts and omitted to state material facts necessary in order to make

the statements made, in the light of the circumstances under which they were made, not

misleading, and engaged in acts, practices and courses of business which operated and would

operate as a fraud and deceit upon purchasers and prospective purchasers of the securities.

55.     As part of his conduct, Defendant Gianamore, in breach of his duty to CSFB and

its clients, provided material, nonpublic information regarding transactions related to Jostens, Charter, Hussman and Burns to Defendant Evans as described in Paragraphs 53 and 54 above.

56.     As part of his conduct, Defendant Evans sold shares of Jostens, Charter, Hussman and Burns securities while in possession of material, nonpublic information regarding Jostens, Charter, Hussman and Burns securities and while he knew or should have known that the information was obtained as a result of a breach of a duty to CSFB and its clients as described in Paragraphs 14 through 51 above.

57.     Defendants Evans and Gianamore knew or were reckless in not knowing the facts and circumstances described in Paragraphs 53 through 56 above.

58.     As a result of the activities described in Paragraphs 53 through 57 above, Defendants Evans and Gianamore violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder.

## COUNT II

### Violations of Section 14(e) of the Exchange Act [15 U.S.C. §78n(e)] and Rule 14e-3 [17 C.F.R. §240.14e-3] promulgated thereunder

59.     Paragraphs 1 through 52 are realleged and incorporated by reference herein.

60.     Prior to Defendant Gianamore communicating nonpublic information to Defendant Evans, substantial steps towards commencing each of the tender offers had been taken.

61.     Defendant Evans purchased securities in Charter, Hussman and Burns as described above, while he possessed material, nonpublic information relating to each of the tender offers he

—

received from Defendant Gianamore. At the time that he purchased securities in Charter, Hussman and Burns, Defendant Evans knew or had reason to know that the information he possessed concerning the securities of Charter, Hussman and Burns was nonpublic and had been acquired directly or indirectly from an insider of the offeror or issuer, or someone working on their behalf.

62.    As a result of the activities described in Paragraphs 59 through 61, Defendants Evans and Gianamore violated Section 14(e) of the Exchange Act and Rule 14e-3 promulgated thereunder.

## RELIEF REQUESTED

**THEREFORE,** the Plaintiff respectfully requests that this Court:

### I.

Find that the Defendants Evans and Gianamore committed the violations alleged above.

### II.

Grant a Final Judgment and an Order of Permanent Injunction, and Other Equitable Relief ("Final Judgment"), in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, enjoining Defendants Evans and Gianamore, their officers, agents, servants, employees, assigns, attorneys and those persons in active concert or participation with them who receive actual notice of the Final Judgment by personal service or otherwise, and each of them, from, directly or indirectly, as principals or aiders and abettors, by the use of the mails or any means or instrumentality of interstate commerce, engaging in the unlawful acts, practices and courses of business described above, or any conduct of similar purport or object, in connection with the transactions in the securities described in this complaint or any other security, including

violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder.

## III.

Grant a Final Judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, enjoining Defendants Evans and Gianamore, their officers, agents, servants, employees, assigns, attorneys and those persons in active concert or participation with them who receive actual notice of the Final Judgment by personal service or otherwise, and each of them, from, directly or indirectly, as principals or aiders and abettors, by the use of the mails or any means or instrumentality of interstate commerce, directly and indirectly, in connection with any tender offer, or a request or invitation for tenders, from engaging in any fraudulent, deceptive, or manipulative acts or practices by purchasing or selling or causing to be purchased or sold the securities sought or to be sought by such tender offer, while in possession of material information relating to said tender offer which information they know or have reason to know was acquired directly or indirectly from a person engaging in the unlawful acts, practices and courses of business described above, or any conduct of similar purport or object, in connection with the transactions in the securities described in this complaint or any other security, including violations of Section 14(e) of the Exchange Act [15 U.S.C. §78n(e)] and Rule 14e-3 [17 C.F.R. §240.14e-3] promulgated thereunder.

## IV.

Grant an Order requiring Defendants Evans and Gianamore to each disgorge all illegal gains plus prejudgment interest.

## V.

Grant an Order requiring Defendants Evans and Gianamore to each pay to the Commission a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. §78u-1].

## VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VII.

Grant an Order for such further relief as the Court may deem appropriate.

Respectfully submitted,

Tina K. Diamantopoulos
Illinois State Bar No. 06224788
Susan M. Weis
Peter K. M. Chan
Attorneys for Plaintiff
Securities and Exchange Commission
500 W. Madison Street
Suite 1400
Chicago, Illinois 60661
Telephone: (312) 353-7390

DATED: January 24, 2002

15



Cat #3

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

U.S. DISTRICT COURT

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
U.S. SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**
RYAN D. EVANS and
PAUL A. GIANAMORE

DOCKETED
JAN 2 5 2002

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

02C 0582

JUDGE CASTILLO

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Tina K. Diamantopoulos and Susan M. Weis
500 W. Madison Street, Suite 1400
Chicago, IL  60661-2511 (312) 353-7390

ATTORNEYS (IF KNOWN)
Daniel E. Reidy, Jones, Day, Reavis
& Pogue, 77 West Wacker
Chicago, IL  60601-1692
Joseph J. Duffy, Stetler & Duffy, L
Suite 400, 140 S. Dearborn Street
Chicago, IL  60603

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Insider Trading Case purusant to violation of Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 [15 U.S.C. 78j(b) and 78n(e)] and Rules 10b-5 and 14e-3 17C.F.R. 240.10b-5 and 240.14e-3 promulgated thereunder.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE 1/24/02

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**

JAN 2 5 2002

CLERK, U.S. DISTRICT COURT
02 JAN 24 PM 2: 58
FILED-EDS

In the Matter of

SEC v. RYAN D. EVANS and
PAUL A. GIANAMORE

Case Number:

# 02C 0582

JUDGE CASTILLO
MAGISTRATE JUDGE BOBRICK

**APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:**

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Tina K. Diamantopoulos | NAME Susan M. Weis |
| FIRM U.S. Securities and Exchange Commission | FIRM U.S. Securities and Exchange Commission |
| STREET ADDRESS 500 W. Madison Street, Suite 1400 | STREET ADDRESS 500 W. Madison Street, Suite 1400 |
| CITY/STATE/ZIP Chicago, IL 60661-2511 | CITY/STATE/ZIP Chicago, IL 60661-2511 |
| TELEPHONE NUMBER (312) 353-6313 | TELEPHONE NUMBER (312) 886-8259 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) IL # 6224788 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) IL # 6211578 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Peter K.M. Chan | NAME |
| FIRM U.S. Securities and Exchange Commission | FIRM |
| STREET ADDRESS 500 W. Madison Street, Suite 1400 | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, IL 60661-2511 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (312) 353-7410 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) IL # 6206718 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**